# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MATTHEW FLOETER,**

**Plaintiff,**

-vs-                                                    **Case No.  6:05-cv-400-Orl-22KRS**

**CITY OF ORLANDO,**

**Defendant.**

_____

# ORDER

This cause came on for consideration on Plaintiff's Combined Emergency Motion for Sanctions, Spoliation of Evidence, and Motion to Strike Pleadings and Defenses. Doc. No. 80. Plaintiff Matthew Floeter seeks sanctions arising from the failure of Defendant City of Orlando ("City") to produce e-mails from Lieutenant Victor Uvalle's computer containing sexually explicit or pornographic materials. Specifically, Floeter asks that the Court strike the City's answer, or, alternatively, strike the City's fifth and sixth affirmative defenses and motion for summary judgment. Doc. No. 80 at 13. Additionally, Floeter seeks attorneys' fees and a refund of the $150.00 he paid to the City as partial compensation for the City's expenses in bringing a motion to compel, doc. no. 46.

In support of his motion, Floeter filed the following documents:

- Defendant's Amended Response to Plaintiff's First Request to Produce, doc. no. 80 at 16-19;

- A portion of William Shawn Fawbush's deposition transcript, doc. no. 80 at 21-23;

- A portion of Brian Gilliam's deposition transcript, doc. no. 80 at 25-28;

- A portion of the City of Orlando Security Audit Report from Vernon Greene to John Matelski, doc. no. 80 at 30-35;

- Report from Vernon Greene to John Matelski, doc. no. 80 at 36-38;

- An e-mail from Vic Uvalle, dated August 19, 2004, doc. no. 80 at 39;

- A portion of Matthew Floeter's deposition transcript, doc. no. 80 at 41-44;

- The first page of an internal affairs statement transcript, doc. no. 80 at 45;

- Various e-mails sent from Vic Uvalle attaching sexually explicit photographs, doc. no. 80 at 46-65; and

- A portion of the deposition transcript of Dwain L. Rivers, doc. no. 80 at 66-69.

The City filed a response in opposition to Floeter's motion.  Doc. No. 82.  In support of its response, the City filed the following documents:

- City of Orlando Security Audit Report from Vernon Greene to John Matelski, doc. no. 82 at 17-22 ("Security Audit Report");

- Report from Vernon Greene to John Matelski, doc. no. 82 at 23-24 ("Greene Report");

- Affidavit of John A. Matelski, doc. no. 82 at 25-26 ("Matelski Aff.");

- Plaintiff's Response to Defendant's Request for Production, doc. no. 82 at 27-28; and

- Affidavit of Vernon Greene, doc. no. 86 ("Greene Aff.").

I held an evidentiary hearing on Floeter's motion on January 11, 2007.  At the hearing, testimony was given by John A. Matelski and Vernon Greene.[1]  The hearing was continued to January 18, 2007, at which time the City submitted documents regarding the replacement of Uvalle's computer ("Jan. 18, 2007, ex. A"), a list of all  the individuals whose assets are provided in the Security Audit Report ("Jan. 18, 2007, ex. B"), and a privilege log.  I have also reviewed other evidence in the record. This matter is now ripe for consideration.

---

[1]  None of the parties ordered a transcript of the hearing.  Accordingly, I will discuss the evidence presented during the hearing from my notes and recollection.

-2-

## I.     BACKGROUND.

Floeter has worked as a detective in the undercover drug unit at the Orlando Police Department since 2000.  Doc. No. 62-2 at 13[2] ("Floeter Dep.").  Detectives Tony Moreschi, Shawn Hayden, Kevin Easterling, and Alex Faberlie were also members of the undercover drug unit.  *Id.* at 20.  In October 2003, Sergeant Barbara Jones became the supervisor of the undercover drug unit.  *Id.* at 15.  Jones in turn reported to Lieutenant Victor Uvalle, and Uvalle reported to Captain Gregory, who reported to Deputy Chief Gauntlett.  *Id.* at 15.

Floeter avers that, after becoming his supervisor, Jones frequently initiated explicitly sexual conversations and contact that Floeter found offensive.  *Id.* at 33-50.  Floeter testified during his deposition, which was taken on December 15, 2005, that he did not complain about Jones' conduct to Uvalle because Uvalle often e-mailed pornographic material and watched such material in plain view on his computer at the police department.  *Id.* at 54-55, 62-66.  Floeter asked Jones to stop the conduct Floeter found offensive, and he ultimately filed a complaint regarding Jones' conduct.  *Id.* at 101.  After doing so, Floeter avers that he was disciplined and stripped of his job responsibilities, among other repercussions.  *Id.* at 18-32.

## II.     CHRONOLOGY.

On April 20, 2004, Floeter filed an Internal Affairs complaint against Jones for sexual harassment.  Doc. No. 63-2 ¶ 6 ("Rivers Aff.").  The complaint was investigated, and investigator Willie H. Webb, Jr. submitted a report of the results of his investigation on July 14, 2004.  *Id.* ¶ 7. On July 29, 2004, Dwain Rivers, manager of the Orlando Police Department Internal Affairs Section,

---

[2] I will use the internal pagination of the depositions for purposes of citations to these documents.

recommended to Jones' chain of command that she be charged with one violation of the Orlando Police Department's Standards of Conduct for conduct unbecoming of an officer based on Jones' admission that she hugged her subordinates. *Id*. at ¶ 9.  There is no indication that Floeter complained about sexually explicit or pornographic emails or displays by Uvalle or others during the Internal Affairs investigation.

On August 19, 2004, Uvalle sent an e-mail to Jones, Floeter, Moreschi, Faberlie, Easterling, and others instructing them to remove any obscene materials from their work space.  Doc. No. 80 at 39.

Meanwhile, the police department received a block grant of funds, and it permitted employees to make requests to purchase equipment using these funds.  *See* January 18, 2007, ex. A.  In a memorandum addressed to Michael J. McCoy, Chief of Police, dated February 4, 2005, Uvalle requested funding for four mobile notebook computers for the commanders in the criminal investigation division of the Orlando Police Department.  *Id*.  In his memorandum, Uvalle wrote that the computers "will provide access to case information and give [officers] the ability to make contact with section and department personnel in times of crises."  *Id*.

On February 14, 2005, Floeter filed a three-count complaint against the City in Florida state court.  Doc. No. 3.  Floeter's complaint alleged violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000 *et seq.*, and the Florida Civil Rights Act (FCRA), § 760.01 Fla. Stat. *et seq.*, for sexual harassment, creating a hostile work environment, and retaliation, and further alleged that the City engaged in negligent retention, training, and supervision of its employees.  Doc. No. 3.  In Floeter's complaint, he alleged that he and other male detectives had to "endure a sexually charged

work environment, which included the dissemination of sexually provocative and pornographic materials to their computers (e-mails) from supervisors and around the work place . . . ."  Doc. No. 3 ¶ 18, 25.  The complaint was first served on the City  on March 2, 2005.  Doc. No. 92-2 at 1.

This action was removed to this Court on March 16, 2005.  Doc. No. 1.  Shortly thereafter, the Court declined to exercise supplemental jurisdiction over Floeter's state court claims, doc. no. 13.  On June 9, 2005, Floeter filed an amended complaint, doc. no. 19.  Floeter's one-count amended complaint again alleged that "sexually provocative and pornographic materials" were sent to his computer from his supervisors.  Doc. No. 19 ¶18.  Shortly thereafter, the City filed its answer, in which it asserted an affirmative defense pursuant to *Faragher v. City of Boca Raton*, 510 U.S. 17 (1993), that Floeter failed to complain about the offensive conduct as required by the City's policies.  Doc. No. 22 at 3-4.

The Court issued a scheduling order requiring the parties to serve their initial disclosures pursuant to Federal Rule of Civil Procedure 26 on or before June 24, 2005.  Doc. No. 18. The Court also required the parties to participate in mediation.  *Id.*  Floeter disclosed as part of his initial disclosures a document that Floeter described in his deposition as a "pornographic e-mail sent to Hayden from Victor Uvalle" with attachments.  Floeter Dep. at 114; *see also* Doc. No. 80 at 47-64.

On July 19, 2005, the City computer that had been issued to Uvalle in 2000 was replaced[3], apparently with one of the notebook computers Uvalle requested in the February 5, 2005,

---

[3]  There is no evidence that in-house or outside counsel for the City ever issued a directive requiring that information which might be relevant to the issues in the case be preserved.

memorandum.[4]  Matelski Aff. ¶ 3.  As was the City's general policy, data from Uvalle the hard drive in Uvalle's Original Computer was copied to the hard drive of the Replacement Computer.  *Id*. Matelski testified that only data existing as of the copy date would be transferred to the Replacement Computer.  Anything that had been deleted before the data was copied would not be transferred to the Replacement Computer and would not be retrievable by forensic examination from the Replacement Computer.  The Original Computer was maintained for approximately two weeks after the data was moved to the Replacement Computer to ensure that Uvalle was not missing any information needed from the Original Computer.  Matelski Aff. ¶ 3; Greene Aff. ¶ 8.  Thereafter, the hard drive was removed from the Original Computer and re-imaged, effectively erasing all of the data.  Matelski Aff. ¶ 3.

It is the City's policy to tag and track assets with a value equal to or greater than $1,000.  *Id*. By tracing its asset number, it was discovered that Uvalle's Original Computer is currently being used by the City's technology management department as a test computer.  *Id*. ¶ 3.  However, the hard drive that had been in the Original Computer when Uvalle used it has been removed.  Because the value of the hard drive is less than $1,000, it was not assigned a tracking number, and the City cannot now locate it.  *Id*.

_____

[4]  All of the City's computers are identified by numbers, called asset numbers.  The digits of each asset number begin with the last two digits of the year in which the computer was assigned. Uvalle's computer at the time of the events alleged in Floeter's complaints was asset number A0001173, which reflects that it was assigned in 2000.  The computer assigned to Uvalle in 2005 was asset number 0500454.  Matelski Aff. ¶ 3.  I will refer to Uvalle's original computer, asset number A0001173, as the Original Computer.  I will refer to the computer assigned to Uvalle in 2005 as the Replacement Computer.

During his deposition on December 15, 2005, Floeter identified Uvalle as a supervisor who had emailed and viewed pornographic material.   Floeter Dep. 54-55, 62-66, 114-17.  Floeter also discussed the sexually explicit e-mail that he produced to the City as part of his initial disclosures. *Id*. at 114-17.[5]

The following day, December 16, 2005, Floeter served his first request to produce on the City. Doc. No. 29.  The document requested "[a] copy of all emails with sexually explicit or pornographic materials emailed from the computer of Lt. Uvalle to anyone from 2000 to present." Doc. No. 29 at 4.  On April 14, 2006, the Court ordered the City to produce these materials.  Doc. No. 37 at 5.

On December 20, 2005, the City began its search for the sexually explicit e-mails described by Floeter.  Greene Aff. ¶ 3.  Vernon Greene, who was then employed by the City as the Internet Security Administrator, *id* ¶ 2, began conducting an audit of the computers assigned to police officers Uvalle, Floeter, Jones, Hayden, Easterling, and Moreschi, *id*. ¶ 3.  Greene also requested the 2005 backup tapes for the City's e-mail server, which are maintained for disaster recovery purposes.  *Id*. ¶ 4.  The e-mail server is where the e-mails generated by Orlando police officers are generally stored. *Id*. ¶ 4.  Matelski testified that the backup tapes are overwritten every four months.  At the time Greene requested the backup tapes, they only existed from October 2005, forward.  Greene was searching for sexually explicit e-mails or other information stored on the officers' computers or in their e-mail accounts on the server.  *Id*. ¶ 3.

---

[5]  Subsequently, Fawbush and Gilliam, who are members of the Orlando Police Department, testified that they also had seen e-mails, videos, and photos of unclothed or partially clothed persons while working at the police department, some of which were characterized by the witnesses as pornographic.   Doc. Nos. 76-6 ("Fawbush Dep.") at 13-14; 76-8 ("Gilliam Dep.") at 14-16.

Greene remotely searched the hard drive on Uvalle's Replacement Computer. *Id*. ¶ 6. Greene attempted to find Uvalle's Original Computer, but he did not find it at that time. *Id*. ¶ 7.  Greene also attempted to perform a remote search of Jones' computer; however, her hard drive had crashed and Greene was not able to retrieve any information from her computer.  Greene Report at 23.

On January 30, 2006, Greene expanded his audit to search all of the computers in the Orlando Police Department's undercover drug unit. Throughout this search of the unit's computers, Greene did not find any sexually explicit content that was attributable to Uvalle.

Similarly, in his search of the backup tapes and e-mail accounts on the server, Greene did not find any sexually explicit documents.  Greene Aff. ¶ 5.  In total, Greene spent approximately three hundred hours conducting the audit.   Greene stopped the audit after determining that there were no other likely sources within which information responsive to the request for production would be located.

On May 1, 2006, the City served its amended response to Floeter's first request to produce. In response to Floeter's request for a copy of Uvalle's e-mails containing sexually explicit materials, the City stated that it had "no documents in its custody, possession, or control that are responsive to this Request."  Doc. No. 80 at 17.

Mediation in this case took place on August 15, 2006.  At mediation, Floeter informed the City that he possessed several sexually explicit e-mails that had been sent from Uvalle's computer.  Doc. No. 80 ¶ 7; Doc. No. 82 ¶ 13.  Based on this disclosure, the City served Floeter with a request for production of documents seeking "[a]ny and all documents in Plaintiff's possession which support or may support his claims that he was subject to a hostile work environment, including but not limited

to: e-mails, recordings, videos, and any other type of correspondence." Doc. No. 46 at 1. Floeter objected to this request, claiming that, as the documents were disclosed at mediation, they were confidential and privileged as work-product. *Id.* at 2.

On September 5, 2006, the City filed a motion to compel production of these documents, doc. no. 46, to which Floeter filed a response, arguing in part that the documents were already in the City's possession. Doc. No. 49 at 4-6. In its reply, the City explained that "after a long and exhaustive search of Lieutenant Uvalle's computer," it did not have the subject documents. Doc. No. 57 ¶ 8. Based in part on the City's assertion that it did not have these documents, on October 6, 2006, I entered an order requiring Floeter to produce documents responsive to the City's request for production of documents and awarded the City $150.00 to compensate it, in part, for the expenses it incurred in making the motion. Doc. No. 58.

## III.   APPLICABLE LAW.

"'Spoliation' is the 'intentional destruction, mutiliation, alteration, or concealment of evidence.'" *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006)(quoting Black's Law Dictionary 1437 (8th ed. 2004)). Federal law governs the imposition of spoliation sanctions in this case, but state law may be consulted to guide the Court in its analysis. *See Martinez v. Brink's Inc.*, 171 Fed. Appx. 263, 268 n. 7 (11th Cir. 2006); *Optowave Co.*, 2006 WL 3231422, at * 8 (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

Generally, spoliation is established when the party seeking sanctions proves (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence;

and (3) that the evidence was crucial to the movant being able to prove its *prima facie* case or defense. *See Optowave Co.*, 2006 WL 3231422, at *8; *Golden Yachts, Inc. v. Hall*, 920 So.2d 777, 781 (Fla. 4th Dist. Ct. App. 2006).   Additionally, in this circuit sanctions for spoliation of evidence are appropriate "only when the absence of that evidence is predicated on bad faith. . . . 'Mere negligence' in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'" *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (quoting *Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)).

IV.    **ANALYSIS**.

     *A.*    *Spoliation*.

        1.    <u>Existence of Evidence.</u>

The first element of the spoliation test is that the missing evidence existed at one time.  It is clear from the evidence that sexually explicit e-mails were sent and received from the Original Computer. As reflected by Greene's audit, evidence that such e-mails existed, even if subsequently deleted, would have been subject to recovery, in whole or in part, through a forensic examination of the hard drive of the Original Computer.  Accordingly, Floeter has established the first element of the spoliation test.

        2.    <u>Duty to Preserve Evidence</u>.

The next issue concerns when a duty arose for the City to preserve the sexually explicit e-mails sent from, and received by, Uvalle.  Using Florida law as guide, "'[a] duty to preserve evidence can arise by contract, by statute, or by a properly served discovery request (after a lawsuit has already been filed).'" *Royal & Sunalliance v. Lauderdale Marine Ctr.*, 877 So.2d 843, 845 (Fla. 4th Dist. Ct. App.

2004)(quoting *Silhan v. Allstate Ins.* Co., 236 F. Supp. 2d 1303, 1309 (N.D. Fla. 2002)).  There  may

be additional circumstances from which a duty may arise if a party is on notice that documents or

tangible items may be relevant or discoverable in pending or imminent litigation.  *See Silhan*, 236 F.

Supp. 2d at 1313 n.13 (citing *Pa. Lumberman's Mut. Ins. Co. v. Fla. Power & Light Co.*, 724 So. 2d

629, 630 (Fla. 3d Dist. Ct. App. 1998)); *see also* Robert D. Peltz, *The Necessity of Redefining*

*Spoliation of Evidence Remedies in Florida*, 29 Fla. St. U. L. Rev. 1289 (2002).[6]

There is no argument that there was a contractual duty to preserve the e-mails.  The only

statutory basis requiring preservation of the e-mails raised during the hearing is the Florida Public

Records Act, § 119.011, Fla. Stat.  However, the Florida Supreme Court has held that personal e-mail

sent on a City owned computer is not within the definition of a public record.  *See State v. City of*

*Clearwater*, 863 So.2d 149 (Fla. 2003).  Accordingly, no statutory duty to preserve the e-mails has

been identified.

The record reflects that Floeter did not serve a discovery request for the e-mail until December

16, 2005.  This discovery request triggered a duty to preserve what was then in the possession, custody

or control of the City.  The evidence reflects that the Original Computer had already been reassigned,

the hard drive re-imaged, and the server backup tapes overwritten at the time of this discovery request.

Thus, the evidence does not establish that the City destroyed evidence in its possession at the time of

the discovery request.

---

[6]  Whether merely filing litigation raises a duty to preserve evidence is an open question under federal law in this circuit.  While some cases upon which the parties relied speak of such a duty, each of the cases also had other facts, such as pending discovery requests, from which such a duty might arise independent of the filing of a complaint.

The only other basis for the duty is if the complaint is construed to have placed the City on notice that e-mail from the Original Computer and other computers might be relevant to this case.  The complaint, which was served on the City in March 2005, specifically alleged that Floeter's supervisors created a "sexually charged work environment, which included the dissemination of sexually provocative and pornographic materials to their [employees'] computers (e-mails) . . . ."  Doc. No. 3 ¶ 18, 25.  The evidence established that Floeter had only a limited number of supervisors, one of whom was Uvalle.  Accordingly, if the service of a complaint is sufficient to trigger a duty to preserve evidence, the City would have been required to preserve at least the Original Computer, which still existed at the time the complaint was served, as well as server backup tapes with copied materials such as those described in the complaint.  Because I conclude that such evidence would not have been crucial to Floeter's case, and that the destruction of the material was not done in bad faith, I need not determine in this case whether the service of the complaint alone triggered a duty to preserve the materials at issue.

    3.   <u>Crucial Evidence</u>.

The third element of the spoliation test is whether the evidence is crucial for Floeter to prove his *prima facie* case or to rebut the City's *Faragher* defense.  Floeter argues that Uvalle's e-mails are crucial to support his testimony about why he did not report the sexual harassment to Uvalle, and to prove his hostile work environment claim.  Doc. No. 80 at 12.

While Uvalle's e-mails may  be relevant to Floeter's case, they are not crucial.  Floeter has attached to his motion eleven sexually explicit e-mails which appear to have been sent from Uvalle. He has also presented deposition testimony from Fawbush and Gilliam supporting his testimony about

-12-

the type and number of such e-mails.  The trier of fact does not need to actually see these e-mails to understand their contents.  Accordingly, because evidence supporting Floeter's testimony about the type and number of sexually explicit e-mails exists, the additional e-mails that might have been found on the Original Computer would have been cumulative and are not crucial to the presentation of Floeter's case.

4.    <u>Bad Faith</u>.

As noted above, in this circuit the negligent destruction of evidence is insufficient to support an adverse inference instruction.  *Bashir*, 119 F.3d at 931.  The evidence presented failed to establish that the City's acted in bad faith by filing to preserve the Original Computer and the backup tapes.

The evidence established that the overwriting of server backup tapes was done as part of a long-standing City practice.  The request to replace the Original Computer was made before the complaint was filed in state court.  The copying of data from the Original Computer to the Replacement Computer was performed consistently with City practice, as was the re-imaging and disposition of the hard drive.  While the timing of Uvalle's request for a replacement computer is certainly suspicious, the evidence is insufficient to establish that the City acted in bad faith in issuing Uvalle a new computer and in its disposition of the Original Computer, including its hard drive.

Accordingly, Floeter's motion for sanctions based on the City's failure to produce sexually explicit e-mails from the Original Computer is not supported by the evidence.

This order should not be read to mean that the circumstances surrounding the replacement and re-imaging of Uvalle's Original Computer would necessarily be inadmissible at trial.  Courts have found that loss of evidence may be relevant and admissible for the jury's consideration, and that

-13-

adverse inferences arising from such destruction can be argued by counsel in closing. *See, e.g., Martino v. Wal-Mart Stores, Inc.*, 835 So. 2d 1251 (Fla. 4th Dist. Ct. App. 2003); *Jordan ex rel. Shealey v. Masters*, 821 So. 2d 342 (Fla. 4th Dist. Ct. App. 2002). Whether such evidence and arguments will be permitted in this case is a decision to be made by the presiding district judge.

        B.       *Refund of Sanctions Payment.*

At the evidentiary hearing, Floeter argued that he should be refunded the $150.00 I ordered him to pay for failing to produce documents in his possession, custody or control that were responsive to the City's request for production of documents. Doc. No. 58. Floeter did not make this request for relief in his motion. Moreover, it was not appropriate for Floeter to refuse to produce responsive documents in his possession, custody or control based on his contention that the City already possessed the documents. Such relief would have to have been sought through a motion for a protective order. Accordingly, no basis exists to require the City to refund the $150.00 sanction paid by Floeter.

## IV.    CONCLUSION.

For the reasons discussed herein, Plaintiff's Combined Emergency Motion for Sanctions for Spoliation of Evidence and Motion to Strike Pleadings and Defenses, doc. no. 80, is **DENIED**.

    **DONE** and **ORDERED** in Orlando, Florida on February 9, 2007.

*Karla R. Spaulding*

           KARLA R. SPAULDING
      UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-14-