# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MATTHEW FLOETER,**

            **Plaintiff,**

**-vs-**                                           **Case No.  6:05-cv-400-Orl-22GJK**

**THE CITY OF ORLANDO,**

            **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S ATTORNEYS COMBINED MOTION TO TAX FEES AND INTERESTS AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 227)** |
| **FILED:** | **February 4, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

Plaintiff Matthew Floeter seeks attorneys' fees and costs as the prevailing party in this claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff seeks an award of attorneys' fees for Frank T. Allen and The Allen Firm, P.A. ("Allen") and Michael LaFay, Esq. of the law firm of Nejame, LaFay, Jancha, Vara, Barker & Joshi, P.A. ("LaFay") (the "Motion"). Doc. No. 227.

I.     **BACKGROUND**

On March 16, 2005, Plaintiff Matthew Floeter (herein "Plaintiff" or "Floeter"), a former employee of Defendant City of Sanford (herein "Defendant" or "City"), filed this action seeking to hold Defendant liable for sexual harassment, hostile work environment, and retaliation under Title VII.  Doc. No. 3.  There are a total of five companion cases ("Companion Cases"), including this case.[1] On May 31, 2005, the Court *sua sponte* severed the Companion Cases. Doc. No. 17. On October 12, 2006, Defendant moved for summary judgment ("Summary Judgment Motion") contending the following:

> [Floeter] was not subject to unwanted sexual harassment that was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive work environment;
>
> Floeter fails to show that the City had or should have had knowledge of the alleged harassment and failed to take proper action after receiving his claims; and
>
> The City did not take any retaliatory or materially adverse employment action against him.

Doc. No. 60 at 1-2.  Plaintiff filed a memorandum in opposition refuting each of the Defendant's contentions.  Doc. No. 70.

On February 18, 2007, the Honorable Anne C. Conway granted in part and denied in part the Defendant's Summary Judgment Motion. Doc. No. 107. The Summary Judgment Motion was granted insofar as it sought summary judgment on Plaintiff's sexual harassment claim, and it was denied insofar as it sought summary judgment on Plaintiff's retaliation claim. *Id.* at 32.

---

[1] The other four cases are *Shawn Hayden v. The City of Orlando*, Case No. 6:05-cv-853-Orl-22GJK; *Kevin Easterling v. The City of Orlando*, Case No. 6:05-cv-855-Orl-22GJK; *Alex Faberlle v. The City of Orlando*, Case No. 6:05-cv-852-Orl-22UAM; and *Anthony Moreschi v. The City of Orlando*, Case No. 6:05-cv-854-Orl-22UAM. At trial, the jury did not rule in favor of *Faberlle*. The *Moreschi* case settled.

The case proceeded to trial before a jury. On April 19, 2007, following two days of trial, Judge Conway granted the Defendant's Oral Motion for Mistrial. Doc. Nos. 138, 139. Defendant states that the trial ended in a mistrial "after Plaintiff's attorney Frank Allen violated this Court's pretrial order prohibiting the parties from using the term 'sexual harassment' . . . in front of the jury." Doc. No. 229 at 2.

The case was transferred to the Honorable Gregory A. Presnell and proceeded to a second trial. After four days of trial, Judge Presnell granted Defendant's Oral Motion for Mistrial "after Plaintiff's attorney Michael LaFay elicited inappropriate testimony from Plaintiff's witness, Kevin Easterling, regarding the outcome of his own virtually identical case at trial." Doc. Nos. 189, 192, 193, 229.

On December 4, 2007, after two days of a third trial, the parties reached a settlement. *See* Doc. No. 214. The Minute Entry states that the "City will pay $15,000.00 to the Plaintiff within 21 days . . ." *Id.* On December 4, 2007, the case was dismissed with prejudice. Doc. No. 215. On February 4, 2008, Plaintiff filed the present Motion. Doc. No. 227. Plaintiff argues he is the prevailing party in the action and should be awarded his attorneys' fees. *Id.* Plaintiff states: "A condition of the settlement, which is on the record, and which was recited to Judge Presnell, was the agreement that for the purpose of an attorneys' fees award Plaintiff would be treated as and designated as the 'prevailing party.'" Doc. No. 227 at 2-3. Plaintiff requests that the Court enter an Order taxing attorney fees for LaFay of $86,835.00, which includes the attorneys' fees incurred in pursuing the sexual harassment claim or, in the alternative, $75,635.00, which

excludes the fees incurred in pursuing the sexual harassment claim. Doc. No. 227 at 20.[2] Plaintiff requests that the Court enter an Order taxing attorney fees for Allen of $95,200.00, which includes the attorneys' fees incurred in pursuing the sexual harassment claim or, in the alternative, $88,200.00, which excludes the fees incurred in pursuing the sexual harassment claim. *Id.* at 20-21.[3] Plaintiff states that the amounts were arrived at by applying the lodestar formula, calculated by multiplying the hours Plaintiff's counsel reasonably spent on litigation by a reasonable hourly rate. *Id.* at 9. Both attorneys applied an hourly rate of $350.00. *Id.* at 8-9. Plaintiff included affidavits from other attorneys stating the hours expended and the hourly rates charged by Allen and LaFay are reasonable. Doc. Nos. 227-6, 227-7, 227-8, 227-9.[4]

Plaintiff requests that the Court consider a multiplier of 1.2 to 1.5, or alternatively an enhancement of 25% to 33%, as to the attorneys' fees award. Doc. No. 227 at 21. Plaintiff also states that he is entitled to interest on the award of attorneys' fees. *Id.*

Allen states that he has litigated civil rights cases for approximately thirteen (13) years. Doc. No. 227-5. LaFay states that he has been a trial attorney for twenty-two years (22), but he does not specify his experience in civil rights cases. Doc. No. 227-4. LaFay states he has been a partner at the law firm of Najame, LaFay, Jancha, Vara, Barker & Joshi, P.A. since 2002. *Id.*

---

[2] Plaintiff states that Nejame, LaFay, Jancha, Vara, Barker & Joshi, PA generated 282.1 hours in *Floeter*, which includes the sexual harassment claim, and 250.1 hours excluding the sexual harassment claim. Doc. No. 227 at 7. Due to the mistrials, LaFay agrees to deduct 34 hours spent in open court. *Id.*

[3] Allen states he generated 272.0 hours including the sexual harassment claim, or, alternatively, 252.0 hours excluding the sexual harassment claim. Doc. No. 227 at 8. Allen does not indicate whether any hours should be deducted due to the mistrials. The Defendant points out that Allen may have miscalculated his hours by adding .7 of an hour. Doc. No. 229 at 6, n. 3.

[4] The affidavits are from Neal G. Bourda, Esq. with the Attorneys Trial Group, who has litigated Civil Rights cases for nine (9) years (Doc. No. 227-6); Victor Chapman, Esq., principal partner at Barrett, Chapman, & Ruta, P.A., who has litigated discrimination cases for twenty (20) years (Doc. No. 227-7); John W. Dill, Esq. with Morgan & Morgan, P.A. who has litigated civil rights cases for fifteen (15) years; and Mark NeJame, Esq., partner with LaFay at NeJame, LaFay, Jancha, Vara, Barker & Joshi, P.A., who has litigated cases for approximately twenty-seven (27) years, but not civil rights cases.

On February 20, 2008, Defendant responded in opposition ("Opposition") to the Motion. Doc. No. 229. Defendant states the following: "Pursuant to the settlement agreement reached between Plaintiff and the City, the City recognizes that Plaintiff may be deemed the prevailing party *at trial* and therefore deserving of *some* attorney's fees in litigating Plaintiff's retaliation claim." *Id.* at 4 (emphasis in original). The Defendant does not concede that the Plaintiff should be treated as the prevailing party in the entire litigation of his claims and, thus, recoup attorneys' fees for all hours expended. *Id.* Defendant argues that because Plaintiff did not prevail on his sexual harassment claim, any hours expended on this claim should be deducted from Plaintiff's fee award. *Id.* at 6 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 435 (1982); *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (C.D. Cal. 1974); *Avila v. Coca-Cola Co.*, 849 F.2d 511, 514 (11th Cir. 1988). Defendant maintains that Plaintiff's attorneys' fees should be reduced by fifty percent, reasoning that the attorneys devoted at least half of their time to Plaintiff's unsuccessful sexual harassment claim. Doc. No. 229 at 7. Defendant maintains that this Court must determine what fees are reasonable. *Id.* at 4. Defendant also states that the hours worked by Plaintiff's counsel should be reduced to either twenty or twenty-five percent (20 or 25%) (depending on whether all five of the Companion Cases or only four were pending during the relevant time) because of overlap between the work in the instant case and the Companion Cases. *Id*.

Specific to Allen, the Defendant maintains that 89.6 hours should be deducted in preparing for and attending to the first mistrial, which was caused by Allen's violation of Judge Conway's pretrial order, and any hours expended as a result of the first mistrial. *Id.* at 9.[5]

---

[5] These hours include Allen's entries from April 11, 2007, through April 19, 2007 (81.4 hours); 5.9 hours for defending Defendant's Motion for Sanction for Causing Mistrial and 2.3 hours for miscellaneous items.

Defendant also maintains that Allen should not receive compensation for the 40.9 hours expended in preparation for and attending the second mistrial. Doc. No. 229 at 9-10. Thus, Defendant maintains Allen's hours should be reduced a total of 130.5 due to the two mistrials. *Id.* Defendant concedes that the hours expended in connection with the third trial should be credited to Allen. *Id.* at 10-11. Finally, Defendant states that the Court should apply a thirty-percent deduction to the total amount of hours performed due to the overlap between Allen and LaFay. *Id.* at 11. Defendants conclude that Allen is entitled to a maximum credit of 29.1 hours. *Id.*

Specific to LaFay, the Defendant maintains that the 34 hours acknowledged by LaFay as being the appropriate amount to deduct considering the mistrials "is simply not enough of a deduction to avoid punishing the City for Plaintiff's counsel's mistakes." Doc. No. 229 at 11-12. Defendant maintains that 68.5 hours expended in connection with the first mistrial should be deducted from LaFay's time. *Id.* at 13.[6] Defendant also maintains that LaFay should not receive compensation for 59.5 hours expended in connection with the second mistrial. Doc. No. 229 at 14-15.[7] Thus, Defendant maintains LaFay's hours should be reduced a total of 128 hours due to the two mistrials. *Id.* Defendant concedes that the hours expended in connection with the third trial should be credited to LaFay. *Id.* at 15. Finally, Defendant states that the Court should apply a thirty-percent deduction to the total amount of hours performed due to the overlap between Allen and LaFay. *Id.* at 11. Defendants conclude that LaFay is entitled to a maximum credit of 51.4 hours. *Id.*

---

[6] These hours include LaFay's entries from April 11, 2007, through April 19, 2007 (66.3); .6 and 1.6.

Defendant argues the $350.00 hourly rate charged by Allen and LaFay is not reasonable. Defendant's argument regarding the appropriate rates is largely based on the affidavit of John M. Finnigan, Esq. ("Finnigan"). Doc. No. 237 at 3-9.  Finnigan testifies that the $350.00 hourly rate "is on the very high end of the range of fair, reasonable and customary rates charged by more experienced and more qualified employment attorneys . . ." and $250.00 to $275.00 is a reasonable rate per hour. *Id.*[8]  Finnigan states that he has been a member of the Florida bar since 1993, and he specializes in employment and labor law. *Id.*, ¶ 1. Defendant requests that Allen's rate be reduced to $234.00 per hour and LaFay's be reduced to $225.50 per hour. Doc. No. 229 at 19. Defendant derives these hourly rates by analyzing the twelve factors delineated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[9]

Defendant concludes that Allen should be awarded $6,809.40 in attorneys' fees and LaFay should be awarded $11,565.00 in attorneys' fees. Doc. No. Doc. No. 229 at 19. Defendant also contends that Plaintiff did not obtain "exceptional result," nor was the representation "superior," to warrant the application of an enhancement fee considering the Plaintiff only obtain six percent (6%) of what he sought in damages before a jury. *Id.* at 21; *see Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Citing *Winn-Dixie Stores, Inc. v. Reddick*, 954 So.2d 723 (Fla. 1st DCA 2007), Defendant maintains that the Eleventh Circuit does not permit multipliers under Title VII. *Reddick*, 954 So.2d at 727 (*citing McKenzie v. Cooper, Levings, & Pastko, Inc.*, 990 F.2d 1183, 186 (11th Cir. 1993)).

---

[7] This compilation includes the following:  1) 57.7 hours for work pertaining to the second trial, which ended in mistrial due to LaFay eliciting inappropriate testimony and 2) 1.8 for work performed as a result of the second mistrial.

[8] Finnigan has been practicing law for fourteen years and charges an hourly rate of $275.00. Doc. No. 99-2.

[9] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

**II.   THE LAW**

Historically, the federal courts have analyzed demands for attorneys' fees pursuant to *Johnson*, 488 F.2d 714. *Johnson* set forth twelve factors to be considered in calculating a fee award.[10] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorneys' fees to comport with decisions of the United States Supreme Court. *Norman*, 836 F.2d at 1299. *Norman* adopted the lodestar approach for calculating attorneys' fees. The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson*, 488 F.2d 714. *Norman*, 836 F.2d at 1298-99. The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorney's fee. *See Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992). Simply stated, the lodestar formula is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington*, 505 U.S. at 559-60 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

The lodestar approach also governs the attorneys' fees analysis under fee-shifting statutes. *Burlington*, 505 U.S. at 561-62 (lodestar figure has become the guiding light of our fee-shifting jurisprudence). This Court therefore applies the *Norman* lodestar approach in determining the amount of fees to be awarded. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question of attorneys' fees, and may consider the request in light of its own knowledge and experience with or without the aid of

---

[10] Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

witnesses as to value of hours dedicated to litigation. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

1. <u>Reasonable Hourly Rate</u>

The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1299. The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299. The party seeking attorneys' fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781 (*citing Norman*, 836 F.2d at 1299). The court may consider direct evidence of rates for similar services or opinion evidence about rates. *Norman*, 836 F.2d at 1299.

The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. *Id.* at 1300. Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Id.* at 1300 - 1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Id.* at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman*, 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove

---

attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717 - 9.

exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Id.* Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.*, 738 F.2d 1143, 1149 (11th Cir. 1984). No two attorneys possess the same skill; therefore, the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman*, 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Id.* at 1301; *e.g., Duckworth*, 97 F.3d at 1396.

### 2. Reasonable Hours Expended

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman*, 836 F.2d at 1302. The fee applicant bears the burden of documenting the appropriate number of hours. *Id.* at 1303 (*citing Hensley*, 461 U.S. at 437; *United States v. Blue Cross and Blue Shield of Florida, Inc.*, 882 F. Supp. 166, 170 (M.D. Fla. 1995)). Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397 - 98; *Norman*, 836 F.2d at 1301. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment" — exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Id.* at 1301-02 (*citing Hensley*, 461 U.S. at 434).[11]

---

[11] A court must not consider an attorney's skill at this stage as this could constitute a double penalty if the rate were first decreased and the hours then lowered based on lack of skill. *Norman*, 836 F.2d at 1301.

It is appropriate to deny a request for fees incurred in preparing for and attending a trial when the requesting attorney engages in misconduct which leads to a mistrial. *See O'Rourke v. City of Providence*, 77 F.Supp.2d 258, 265-266 (D.R.I. 1999), *rev'd on other grounds*, 235 F.3d 713 (1st Cir. 2001) (*citing Gierlinger v. Gleason*, 160 F.3d 858 (2nd Cir. 1998)). In *O'Rourke*, the Court states that interpreting *Gleason* broadly, "it not only suggests that outright misconduct would warrant a reduction of fees, it indicates clearly that a reduction of fees would be appropriate where the plaintiff's attorney otherwise bears significant responsibility for lengthening the trial process." *O'Rourke*, 77 F.Supp.2d at 264.[12]

## III.   APPLICATION

Pursuant to the settlement reached in open court, Plaintiff is the prevailing party as to the retaliation claim and should be awarded his attorneys' fees and costs. *Christiansburg Garment Co.*, 434 U.S. at 416 - 18. Plaintiff did not prevail on the sexual harassment count. The court in *Hensley* reasoned:

> And even where two claims apparently share no "common core of facts" or related legal concepts, *see ibid*, the actual work performed by lawyers to develop the facts of both claims may be closely intertwined. For instance, in taking a deposition of a state official, plaintiff's counsel may find it necessary to cover a range of territory that includes both the successful and the unsuccessful claims. It is sometimes virtually impossible to determine how much time was devoted to one category or the other, and the incremental time required to pursue both claims rather than just one is likely to be small.

*Hensley*, 461 U.S. at 448. Thus, a court is not obligated to discount the fees incurred while prosecuting the sexual harassment claim as long as the two claims arose from the same operative facts. However, the Court in *Avila* stated the following:

---

[12] In *Gleason*, the Court did not reduce the fees because they found no misconduct on behalf of the attorney.

> We agree that, under the law of this circuit, the two claims may be regarded as 'related' for purposes of determining the attorney fees award. However, as we suggested in *Popham*, a district court calculating a fee award may disallow fees for an unsuccessful claim even though the unsuccessful and the successful claims are related, if the plaintiff obtained only *limited success*.

*Avila*, 849 F.2d at 514; *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) (emphasis added, internal citations and quotations omitted). Furthermore, the Supreme Court in *Hensley* maintained that "where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 423. It appears that the retaliation claim arose from the same or at least sufficiently related operative facts as the sexual harassment claim. However, considering the limited recovery obtained in this case, the Court is not obligated to include the fees incurred in pursuing the sexual harassment claim.[13]

Allen purportedly worked 252.0 hours solely on the retaliation claim. *See* Doc. No. 227 at 8. LaFay maintains that he performed 250.1 hours solely on the retaliation claim. *Id.* at 7. Defendant argues that Plaintiff's attorneys' fees incurred prior to February 18, 2007 (the date summary judgment was granted for Defendant on sexual harassment claim) should be reduced by fifty percent reasoning that the attorneys devoted at least half of their time to Plaintiff's unsuccessful sexual harassment claim. Doc. No. 229 at 7. Given the limited success obtained by Plaintiff, the Court recommends that Allen's and LaFay's hours expended prior to February 18, 2007 be reduced by fifty percent. Prior to February 18, 2007, Allen worked 98.0 hours. Doc. No. 227-3. His hours will be reduced by 49.0 hours. Prior to February 18, 2007, LaFay worked 90.9 hours. Doc. No. 227-2. His hours will be reduced by 45.45 hours.

---

[13] Plaintiff received a $15,000.00 settlement when initially seeking a claim for $250,000.00 in damages. Doc. No. 96 at 8.

In Allen's and LaFay's affidavits, the attorneys attest that a reasonable hourly rate in the Central Florida area for partners at law firms in Title VII cases is between $300.00 and $375.00, and their respective rate is $350.00. Doc. No. 227-4; Doc. No. 227-5. Each of the attorneys also had fellow colleagues attest to the reasonableness of their proscribed hourly rate and the reasonableness of the hours performed. *See* Doc Nos. 227-6; 227-7; 227-8; 227-9. To the contrary, Finnigan testified that the rates sought by Allan and LaFay are not reasonable. Doc. No. 237. Finnigan states further that a reasonable rate for Allen and LaFay is between $250.00 and $275.00. *Id.*

In his affidavit, Allen states that he has litigated civil rights cases for approximately thirteen (13) years. Doc. No. 227-5. LaFay states that he has been a trial attorney for twenty-two years (22), but he does not specify his experience in civil rights cases. Doc. No. 227-4. LaFay states he has been a partner at the law firm of Najame, LaFay, Jancha, Vara, Barker & Joshi, P.A. since 2002. *Id.* Finnigan states in his affidavit that he has been a member of the Florida bar since 1993, and he specializes in employment and labor law. Doc. No. 237. The Courts finds it necessary to reduce Allen's hourly rate to a rate of $325.00 per hour and LaFay's hourly rate to a rate of $300.00. In making this determination, the Court was guided by previous Middle District decisions. *See, e.g., Salvador Ochoa, Filiberto Ricardo, Miriam Medina v. Alie Brothers, Inc., d/b/a Fabri-kleen Textile Services, Rayman Alie*, Case No. 6:06-cv-609-Orl-DAB; and *Marcia E. Johnson v. Corinthian Colleges, Inc.*, Case No. 6:05-cv-1917-Orl-22KRS. In each of these cases, the respective Courts awarded fees at an hourly rate lower than the rate requested by Allen and Lafay. *Id.* [14]

---

[14] In Case No. 6:06-cv-609-DAB, hourly rates of $250 and $300 were approved. Doc. No. 59.  In Case No. 6:05-cv-1917-22KRS, an hourly rate of $300 was allowed. Doc. No. 52.

The next issue the Court will address is whether some of the hours presented for consideration need to be reduced to twenty or twenty-five percent due to the Companion Cases. Plaintiff states the following: "Plaintiff's counsel has already allocated, divided or separated his time accordingly, Defense Counsel has been advised/informed of such, and any argument(s) to this regard by Defense Counsel would not be made in 'good faith'." Doc. No. 227 at 10. The Court has reviewed the respective attorneys' timesheets. Doc. Nos. 227-2; 227-3. LaFay's time records indicate that he prorated the hours amongst the Companion Cases on five occasions. Doc. No. 227-2 at 1-2. Allen's time records are not indicative of any proration. Doc. No. 227-3.

Most noteworthy in Allen's time records are the amount of hours spent in each of the three noted cases on January 10, 2007. According to his submitted time, on January 10, 2007, Allen worked 27.5 hours (11 hours in *Hayden*, 11 hours in *Easterling* and 5.5 hours in *Floeter*). *See* Doc. No. 227-3, *Floeter*; Doc. No. 108-2, *Hayden*; Doc. No. 93-2, *Easterling*. Here, it is apparent that Allen did not prorate his time considering the impossible amount of hours allegedly worked in a single day. Allen should not be given attorney's fees for January 10, 2007.[15]

Allen billed for a total of 4.7 hours in the present case and in *Easterling* and *Hayden* in reviewing and responding to the City's Motion in Limine. The City's Motion in Limine consists of twelve pages and cites fifteen cases. Doc. No. 72 (as amended). Plaintiff's response is eight pages and is almost identical in each of the five cases although filed on different dates. Doc. No. 78. Although some effort may have been made, it does not appear that Allen prorated his time in this instance. It should not have required 4.7 hours to draft each individual response. Thus, the Court will reduce this amount to twenty-percent (20%), totaling .94.

---

[15] Therefore, 5.5 hours will be deducted from Allen's purported hours.

The total amount of hours that the Court has determined should be deducted thus far from Allen's time is 58.26 hours.[16] However, the Court recommends that additional hours be deducted as a result of the two mistrials because the conduct of Plaintiff's counsel did substantively lengthen the trial process. *O'Rourke*, 77 F.Supp.2d at 265-266; *Gleason*, 160 F.3d 858. The Court calculated 128.2 hours of Allen's time was expended in preparing for and attending the two mistrials, including the hours performed in defending the Defendant's Motion for Sanctions.[17] The Court includes the hours performed in defending the Motion for Sanctions because the Motion for Sanctions resulted from the first mistrial. However, the Court recognizes that not all of the hours performed in preparing for the two trials should be deducted because some portion of that work may have been useful in the final trial. The Court recommends that eighty percent (80%) of the time expended in connection with the two mistrials be deducted from his claim. Thus, the Court recommends that Allen be awarded fees for 111.18 hours.[18]

In regard to LaFay, the total amount of hours that the Court has determined should be deducted thus far from LaFay's time is 45.45 hours.[19] The Court calculated 119.8 hours of LaFay's time was expended in preparing for and attending the two mistrials, including the hours performed in defending the Defendant's Motion for Sanctions.[20] For the reasons set forth above,

---

[16] The number includes 49.0 hours from the sexual harassment claim, 3.76 from the Motion in Limine, and 5.5 from January 10, 2007.
[17] This calculation includes the following entries: **4/12/2007**: 2.5, 13.0, .3; **4/13/2007**: 3.3, 3.0, 5.3, .2; **4/14/2007**: 5.0, 1.5, 2.7; **4/15/2007**: 4.5; **4/16/2007**: 2.1; **4/17/2007**: 2.0, 5.5, 9.0, .3, .4, .1, .1; **4/18/2007**: .2, .4, 8.0, 2.0; **4/19/2007**: 6.0, 2.5; **5/4/2007**: .2; **5/8/2007**: .1, .5; **5/10/2007**: .3, .2; **5/15/2007**: .1; **5/16/2007**: .1, .2; **5/18/2007**: 2.0; **5/20/2007**: 1.5; **5/25/2007**: .2; **5/29/2007**: .1; **6/11/2007**: 2.0; **6/12/2007**: .1; **7/26/2007**: .1; **9/14/2007**: .1, .1; **9/18/2007**: .1, .1, .2, .8; **9/19/2007**: .1, .5; **9/24/2007**: .3; **9/27/2007**: .3; **9/28/2007**: 6.0; **9/29/2007**: 7.0; **9/30/2007**: 5.0; **10/1/2007**: 8.0; **10/2/2007**: 8.0; **10/3/2007**: 4.0. Doc. No. 227-3.
[18] This calculation is as follows: 80% of 128.2 = 102.56; 102.56 + 58.26 = 160.82; 272.0 – 160.82 = 111.18
[19] The number (45.45) results from the sexual harassment claim.
[20] This calculation includes the following entries: **4/12/2007**: 3.0; **4/13/2007**: 2.5, .5, .2, 7.0; **4/14/2007**: 1.5; **4/15/2007**: 6.0; **4/16/2007**: 2.5, .2; **4/17/2007**: .2, 15.0, .1; **4/18/2007**: .1, 3.0, 9.0, 1.0, 4.5; **4/19/2007**: 6.5; **5/7/2007**: .5; **5/16/2007**: .1; **6/12/2007**: .1, .4; **7/5/2007**: .1; **7/6/2007**: .1; **7/12/2007**: .7, .2; **7/26/2007**: .1, .4; **9/14/2007**: .2; **9/18/2007**: .5, .8, .1, .1, .2; **9/19/2007**: .4, .2, .1; **9/21/2007**: 1.2, **9/24/2007**: .3; **9/26/2007**: .5, .2;

the Court recommends that eighty percent (80%) of the time expended in connection with the two mistrials be deducted from his claim. *O'Rourke*, 77 F.Supp.2d at 265-266; *Gierlinger*, 160 F.3d 858.  Thus, the Court recommends that LaFay be awarded fees for 140.81 hours.[21]

Defendant has also requested that the fees sought be reduced by thirty percent (30%) for overlap between Allen and LaFay. The present case was pending for two and one-half (2 ½) years and was in trial for three (3) days. The Court did not observe any substantial overlap between Allen and LaFay. Accordingly, the Court recommends against reducing fees by thirty-percent (30%) due to overlap.

Finally, the Court recommends against finding that the attorneys are entitled to either an enhancement fee or a multiplier. The Eleventh Circuit does not permit multipliers under Title VII. *Reddick*, 954 So.2d at 727.  Furthermore, the Court does not find the results to be exceptional warranting the application of an enhancement fee. *See Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).

It is therefore **RECOMMENDED** that the Motion [Doc. No. 227] be **GRANTED in part** and **DENIED in part**. Frank T Allen, Esq. and The Allen Firm, P.A. should be awarded $36,133.50 in attorneys' fees [111.18 x $325.00]. Michael LaFay, Esq. and the law firm of Nejame, LaFay, Jancha, Vara, Barker & Joshi, P.A. should be awarded $42,243.00 in attorneys' fees [140.81 x $300.00].

---

**9/27/2007**: 2.0, 4.2; **9/28/2007**: .2, .1, .3; **9/29/2007**: 5.5; **9/30/2007**: 6.0, 3.7; **10/1/2007**: 2.5, 9.0, 4.0; **10/2/2007**: 8.0; **10/3/2007**: 4.0. Doc. No. 227-2.

[21] This calculation is as follows:  80% of 119.8 = 95.84; 95.84 + 45.45 = 141.29; 282.1-141.29 = 140.81.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 23, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Ann C. Conway
Counsel of Record
Unrepresented Party